3 180595 people of the state of Illinois Appley versus Bobby Lee Archie appellant counsel uh your video's on can you hear the court yes yes yes judge okay very good uh Mr. Wozniak you may proceed thank you your honor your honors may it please the court counsel my name is James Wozniak I am counsel for the appellant in this matter Bobby Archie over the course of eight hours spread over two days in October of 2015 Bobby Archie uttered words to detectives of the Peoria Police Department that those police and eventually the state viewed as a confession to the murder of Taquilla Jackson yet these words were uttered by a man who suffered from physical and mental maladies had a verbal IQ score of 44 had not taken his prescribed mental health medications that day and was confronted by detectives with mentally coercive interviewing techniques and with questions statements and edicts about God and faith and all of these factors thus demonstrated that Bobby's statements to police were not voluntary and should have been suppressed by the circuit court the police here thought they had the killer of Taquilla Jackson in front of them the moment Bobby showed them the room where Ms. Jackson stayed and where Bobby's possessions now were and where they saw what they thought was blood in that room from that moment the police never considered another subject and tried for over eight hours to extract a confession from Bobby and it was finally after Detective Curry gave Bobby a the choice to be godless and say he was a cold-blooded killer or still be with God and instead admit that Bobby killed Jackson in an emotional state and after that Bobby finally uttered the words that would be used to convict him at trial here the court needs to consider the totality of the circumstance what were those words Mr. Rosen there was a a series of moments where God and religion was brought up over the course of the the interview but the most important I think words that this court should focus on and these are these are the statement made by Detective Curry mere minutes before Bobby made the admissions is quote did God make you emotional like that or are you a cold-blooded killer which one is it it's one or the other before he made that statement Detective Curry had said that God puts emotions in people God put emotions in in where you said utter his words I assume you're talking about the defendant's words so what were they excuse me I what before I thought you were talking about the defendant's words that's what I was asking what his words were you said utter his words oh the the admissions that the state used against him at trial your honor which and I asked what they were that oh he after after that Mr. Bobby stated that he had killed Ms. Jackson with a crowbar in her room and that had uh taken her body uh to the the basement of the house taking it downstairs um and then at some point tried to take her body up from the uh the basement and then placed her her body in the backyard the police then Ms. Jackson's body was found in a a trash can when police further interrogated Bobby about placing Ms. Jackson in the trash can Bobby stated that he did not know how she ended up the trash can okay thank you Bobby had said that he was religious the police knew he was religious and Detective Curry and the other officers exploited Bobby's faith to coerce his the admissions and statements that were used against him Bobby suffered from uh as a physical and mental health problems he had pins in his hip he walked with a noticeable limp so much so that officers even noted when he first walked into the interrogation room he suffered from diabetes he suffered from schizophrenia he was on medication for that disorder he had not received his medication and he had not taken his medication since he had been arrested by the police the day before in fact on the second day of the interview he in the interview video he is making calls and asking the police to get a hold of I believe his social worker or his counselor to help get the medication that he needs for his schizophrenia the psychologist who testified at the motion suppress statements hearing noted that in watching the video it appeared that Bobby was suffering from from some symptoms of his of his schizophrenia even during the interview I urge this court to why I know that the court watches the the record or watches the videos reads reads the record in its entirety what I do urge about for the court in this is to is to watch the entirety of the video here including all of the moments where the police aren't even in the room and and speaking with Bobby this is about eight to eight and a half hours over the course of two days the court will hear dozens of times that Bobby tells the police that he did not kill Jackson that he had nothing to do with this including times when no one's in the room that he is just talking to himself watch how Bobby's body language changes on the second day again he has had not had medication where he's his he's rocking back and forth his body language appears to have changed from the previous day and the court should pay particular attention to Bobby's body language after he makes what the state used as as a confession to the murder of Ms. Jackson and what police I'm sure would say could probably be viewed as when Bobby was telling the truth but I think that it should be interpreted that it's that moment where Bobby is actually lying where the crush of the physical and mental pressures the police have exerted upon him he has broke down and now made a not voluntary statement to police because the totality of the circumstances demonstrated that Bobby Archie's statement to statements to police were not voluntary his statement should have been suppressed by the circuit court and because Archie's statements were the cornerstone of the state's case against him without those statements it cannot be shown that the state could have proved Bobby guilty beyond a reasonable doubt and the circuit court's denial of Bobby's motion to suppress statements should be reversed and this matter should be remanded to the circuit court where it is ordered that Bobby's statements are then suppressed your honors are there any questions about this uh the issue before I move on to the second issue in my brief I don't believe there are no moving on to the first issue the court does not need to reach the second issue of the ineffective assistance of counsel claim however if the court does make a ruling on the second issue might prove instructive if the case is remanded back to the circuit court trial counsel was ineffective in several areas and they prejudiced Bobby and the prejudice was all related to Bobby's defense and theory of case that another person a Richard Mczee was the person that killed Taquilla Jackson trial counsel did not properly admit Taquilla Jackson's statements against Richard Mczee's statements that she made an order protection hearing about a year prior to her death those statements were barred by the court however uh counsel did not attempt to seek admission of those statements under acceptable hearsay exceptions such as the state of mind or former testimony what the court did rule or allow defense counsel to do was to present the actual order of protection of the fact that an order of protection existed between Taquilla Jackson alleging or that she got against Mr. Mczee at trial evidence of that at trial however when the trial occurred counsel never actually presented the fact that the order of protection existed all counsel did was asked two of the detectives on the case whether or not they were aware that an order of protection had been obtained by Ms. Jackson against Mr. Mczee both detectives said they were not aware of that fact and then counsel never actually admitted the order of protection at trial so the jury was never given the fact that an order of protection actually existed further when Mr. Mczee was called to the stand by the defense all counsel asked was one question which hand did Mr. Mczee write with it was then on cross-examination when Mr. Mczee said that Ms. Jackson was his wife and that he loved her that counsel could have then impeached Mr. Mczee with the order of protection not only the fact that existed but also Ms. Jackson's statements against Mr. Mczee in the order of protection hearing we know wasn't trial strategy for counsel not to cross-examine Mr. Mczee on that because in the motion for a new trial counsel explicitly stated I didn't it was not trial strategy for me to not ask Mr. Mczee about the order of protection and what counsel appeared to have thought was that the court's order was going to stand even if uh he objected or or tried to bring in the uh the order of protection testimony and thus didn't didn't bring it up it appeared that in hindsight at the motion for a new trial counsel thought that he should have brought the uh order of against Mr. Mczee and it was not trial strategy not to do it finally that were counsel aired was the trial court sua sponte order to not allow evidence of a hammer which was found in the home into evidence at trial uh what the the state argued was that well bobby had said that he killed Ms. Jackson with a crowbar so it's not the hammer we forensically test it there's no blood on it so the hammer is not the murder weapon the court then says well there will be no evidence of the hammer coming in at trial and then what happened is the photographs that were taken of a hammer were not admitted at a trial and there was actually a video of a walk around when the search warrant was conducted of the home and the the snippet where the hammer was found was then edited out so the jury did not see where the the hammer was found this was a relevant piece of evidence it was found in the home where the murder occurred Ms. Jackson was killed by blunt force trauma the murder weapon was never found counsel should have been allowed to present evidence of the hammer and a theory that Ms. Jackson may have been killed by that hammer the state could have then tried to rebut that testimony or evidence with their own witness saying that it was forensically tested and that there was no evidence of of any blood found and that that it's not the murder weapon the state was free to then call a witness to try to counter them the state's uh or to counter the defense's argument that that hammer may have been the murder weapon but because the state or because excuse me the court did not allow the hammer to be introduced in evidence counsel was not able to present that defense and when you couple the lack of the hammer being admitted to evidence with the fact that in the order protection testimony Ms. Jackson said that Mr. Mczee had thrown a hammer at her this hammer was a very relevant piece of evidence that should have been brought in to the trial counsel was say again your honor where was the hammer found I believe I recall it was found in a room with some items in it that may have been where the other two people that were staying in the house lived if I recall it was that's where it was found there was there was a bunch of boxes and and things in that room for my recollection of the search warrant video I think that's where it was found so hammer was not found in the defendant's old bedroom correct I believe that's correct your honor yes it was found in the no no I don't know oh his old bedroom yes correct yes yes because he had moved into Ms. Jackson's bedroom and he had stayed in the other room correct your honor and but the that was the room that then the other two people living in the house were now residing in when the police showed up on that day in October okay are there any other questions your honors no appear not so for all of these reasons your honor we ask that Mr. Archie's conviction sentence be reversed this court this case be remanded back to circuit court where Mr. Archie's statements are ordered to be suppressed or in the alternative Mr. Archie's sentence reversed because of the ineffective assistance of counsel that he received and that this case be remanded for further proceedings oh I do have one question yes your honor the defense had a psychologist who examined the defendant is that correct yes your honor and did that report help you in any way some of the the information the report was helpful for instance Mr. Archie's IQ he had a verbal IQ of 44 and a decision-making IQ of 84 his his total full-scale IQ is not actually presented in the record but later on the prosecutor seems to indicate that his full-scale IQ was 55 so also the psychologist talks about Bobby's schizophrenia and that felt that at the time of his interview that he was suffering from the symptoms of his schizophrenia when he was interviewed by police I thought that he didn't exhibit symptoms the the ultimate conclusion of the psychologist was that whatever symptoms he was suffering she was called to testify about whether or not Bobby could waive his Miranda rights whether or not he was he was able to do that although she noted his IQ particularly his low verbal IQ his schizophrenia and did state that he was suffering from symptoms of his schizophrenia did not feel that his his mental state at that time made it that so that he could not waive his Miranda rights well thank you thank you time is up there thank thank you Mr. Wozniak thank you Mr. Genetovic you may respond may I please court counsel uh Gary Genetovic with the appellate prosecutor's office on behalf of the people of Illinois the as counsel's outlined already the issue that the court has to decide here and this this this first issue on the motion to suppress is to determine whether the defendant's will at the time he confessed was it overborn or was his confession made freely voluntarily and without compulsion or inducement of any sort and if you take a look at the totality of circumstances the Miranda warnings defendant's personal characteristics the legality and duration of not only the detention but the questioning as well as the conditions of the detention and the fact that there are no threats or promises or deception of any nature to induce the confession the people submit that basically this court I voluntarily um subnormal mentality alone does not ifso facto render a confession involuntary it really is to be determined even with the subnormal mentality as long as the defendant has the capacity to understand and the meaning and effect of this confession then the confession is voluntary in this case what we have is we have the psychologist dr gene clark testifying first of all with respect to defendant with respect to his his schizophrenia because what we have the facts and the evidence all kind of direct the police to bodies to the defendants of residence where they enter the room where the victim supposedly had been staying which by the way body kind of indicated that she had moved out two weeks before which I kind of find kind of interesting because the body here was found on october 22nd the last time the victim was seen alive was october the 8th two weeks before the when we take a look at what happened here the defendant was schizophrenic he was taking his prescribed medication although on the second day he was searching to take and have his medication delivered to the jail at the time of his questioning he was on parole since march 18th of 2013 out of missouri after having served 23 years of a sentence there for first degree robbery two counts of armed criminal action and assault in where he assaulted the victim not only striking the victim in the head with a police baton but also stabbing the victim in the back and the stomach so as the general background as to where he had come from the defendant was 51 years old at the time and so he was burst with the criminal justice system dr clark testified that there was enough in terms of both time that when the rights were read to the defendant and the events that followed indicated that the defendant understood his rights and that he was more than able to knowing what they were how to assert them and that he could actually take and waive those rights one of the key elements here is the fact that she testified that there was no impact on the defendant's ability for example to understand when the officers uh when he had asked for counsel they said well do you want they didn't ask for an attorney they want to know if you wanted your attorney she basically said that defendant had the ability to understand yes his verbal iq may have been 44 but his non-verbal was 84 which kind of indicated to her that the scores somewhat underestimated the defendant's ability to communicate and i too implore the court as counsel did here and i'm sure the court will if they already haven't to watch bobby's interrogation to watch his interaction with the police he understood what they were asking he was able to take in intelligently and cogently respond he was able to take and communicate effectively with them there's no signs of any kind of of coercion no sign of any kind of of threats or promises or inducements of any sort he knew that counsel could be appointed obviously he knew he had a right to counsel he asserted his right to counsel which caused the interview in the morning of the early morning to two o'clock 2 30 in the morning on the 23rd of october to cease because what did the police do once he asserted his right to counsel they scrupulously honored that right even when he was in the sally port and wanted to be taken to the county jail wanted to take and go back and talk to him detective curry said no we're taking a break it's late uh been at this long enough you asserted your right to counsel it's time to think about it scrupulously honored so dr clore also testified that defendant knew the trial judge was his role knew what the prosecutor's role was knew what pre-bargaining was basically defendant was very well oriented he knew what was going on he had the ability to be able to take to understand miranda understand his rights as well as to waive those rights the question concerning and i think this is also very important with respect to the recollection of events bobby at times displayed selective memory he would say she pointed out and this would have been in the uh her third interview with uh with the defendant he would take and say that he did not know certain things about what had happened but later during the interview he would basically take and relate those very things that he said he couldn't remember she also testified that defendant said he could not recall confessing yet he could recall the specifics of the interview bobby said that he could not recall what miranda rights were but he nonetheless was able to to be able to take and adequately summarize what those rights were he could explain each one as the doctor went through with him so basically her opinion was that bobby could competently waive miranda rights he was not susceptible to pressure he was not susceptible to any kind of inducements he understood his rights and had an ability to do so the balance of the other of the other factors the legality of the detention the plain view observation of what in the house the uh the fact that yes as counsel pointed out bobby was interviewed for eight and a half hours over two days two separate interviews in those interviews those interviews are then broken down into two segments so this wasn't like a continuous eight and a half hour uh you know third degree kind of interrogation they interrogated him they questioned him they took breaks he had food uh they brought him lunch on the second day what they did is they were forthright and the evidence that they found things that they were finding out as as as forensics went through basically what what occurred here was a proper interrogation was something that that bobby made a confession freely and voluntarily with respect to um the argument that that somehow right before bobby confessed uh detective curry made this uh uh plea with respect to to religion and to bobby's faith and to whether or not bobby you know had a killer the u.s supreme court in burglars versus tompkins a 2010 case basically kind of sort of had the same argument presented to him in this issue the the defendant tompkins um stated that uh that his confession was was somehow coerced because prior to to to being questioned what it happened was he uh was presented with with with a religious implorement from the detective and the supreme court basically said tompkins does not claim that the police threatened or interrogation or that it was any law or that he is any way fearful the interrogation was conducted to stand inside his room in the middle of the afternoon the fact that helbert's questions referred to tompkins religious beliefs also did not render tompkins statement involuntary the fifth amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion in these circumstances thompson's silent i think that that this i think is exactly the same thing that happened here i don't think that there's this is not the kind of coercion not the kind of of intimidation that the fifth amendment seeks to protect that um somehow affected uh some kind of psychological coercion upon the defendant to confess so under the totality of the circumstances people first submit that uh the confession was voluntary and the trial judge's decisions in denying the motion of suppression should be should be uh affirmed alternatively alternatively if you take a look at arizona versus full name and people versus rice basically the admission of an involuntary confession is really not much different than any kind of trial error in both degree and kind so it is subject to harmless error the people would submit that there's more than enough evidence here to also find that the admission of the involuntary confession was harmless that being that it appears that beyond a reasonable doubt that the error did not contribute to the verdict in this case what we have is we have the victim's body being found in a garbage can in an alley by a house that basically was vacant um in that garbage can we saw that the body was a pair of gloves what we have is we have the last contact being october 8th we have the defendant basically keeping in contact with the family telling me i don't know what happened basically the victim moved out two weeks ago and took all her furniture yet we come to find out the fact that we have blood not only in the room where the victim had resided when she lived in defendant's residence we have defendant moving in that room we have all kinds of cleaning materials we have uranic acid we have the kind of face masks that we now wear because of covid 19 we have blood smear all over the house under the under the steps on the steps on the steps going outside in the lawn we have a mattress that has blood on it found the alley a plain view of that place when they first arrived on the 22nd and then what we have is in all of this by the way although even though this blood that was found around the house could not be analyzed for dna because it was insufficient dna what we do have is we have with respect to the mattress the east with the respect to the mattress in the east bedroom wall as well as the stain on ceiling we have dna evidence that basically establishes it's the victim's blood who is the contributor but not the defendant what is is i think detrimental to defendants argument that the evidence is not harmless is the dna that's found in the gloves the gloves show the dna not only of the victim but also could not be excluded of the defendant so the defendant and gloves that he wore are found in a garbage can with the victim with the blood from found inside his house plus on top of that there's absolutely no evidence that anyone had any kind of admission or access i should say to the house beside the defendant so we take the look the totality of the evidence in this case i think that the evidence is more than sufficient to basically establish that the defendant's guilt for this um or beyond a reasonable doubt and so therefore if there is any error it is harmless error and the defendant's conviction should nonetheless be sustained with respect to the second issue on ineffective assistance ineffective assistance in a way it's it's it's it's i always kind of think of it when i kind of get involved with the ineffective assistance case and when we started hearing arguments about what counsel could have should have and ought to have done it's kind of like armchair quarterbacking and you're able to take and have the 2020 vision of hindsight okay so strickland versus washington probably the seminal case on ineffective assistance in the standard to use caution against using and eliminating the effects of hindsight now in this particular case the ineffective assistance all centers around this order of protection it's order of protection that was obtained 13 months prior to the victim's body being found we have the want to take and use this order of protection as a means to admit into evidence what really amounts to hearsay now in this particular case um the order of protection the testimony of what was provided could not be used directly because of the fact that um the uh forfeiture by wrongdoing the statute precludes that i see that my time is up i will just simply say that on the ineffectiveness um this was hearsay it was inadmissible no exception applied and therefore counsel was not ineffective for what he did here we would ask the court to affirm thank you mr ganetic uh mr wozniak you must wish to reply yes your honor one of the things that uh of recent now that the world is slowly opening back up after the pandemic i've been able to do is start again officiating uh high school basketball and i was officiating the game last night and it was late in the game the team that was on defense was down eight or ten points uh the coach is yelling red red red which when i played basketball meant i i'm expecting a foul and there was an aggressive foul that i called as an intentional foul and i think virtually everyone agreed uh including most of the visit their home fans that that was an intentional foul other than the coach of of the the team where i called it on and the reason i bring this up is that the totality of the circumstances in that moment one team's being down the word being yelled red red red expecting a foul to come knowing the circumstances of a basketball game how it happens but it was the result of the play which when i put all that totality of those circumstances together told me well this is an intentional foul and i think what i i know what i i suppose i would be doing in your shoes justices and what most people do is when you look at the totality of the circumstance in this case part of the thing that has to factor in is what was the thing that was actually said by the defendant what what did he admit to is there truth in what he admitted to now i would hold that the law states that uh not the totality of circumstance can make a statement not voluntary even if the statement afterwards is the truth we would obviously have that case with with physical coercion where you're beating or or depriving a a defendant of food or or or link regardless of what comes afterwards here virtually everything that bobby adventure eventually admits to you can even look at arguably that he would have had knowledge of just because he simply lived in the house or the police were kind of feeding him bits of information except for one and this is the one that the police thought that was the most important thing was the extension cord that was tied around miss jackson's legs as she was brought up the the the stairs as what bobby said and was wrapped around her legs when she was in the trash can i'll admit that that is one piece of information that the police never mentioned at all in their interviews before bobby brought it up and so you can look at this and say well bobby had to have murdered miss jackson because he gave a would know but what bobby said is that and what his defense was is that richard mczee miss jackson's ex-boyfriend had killed her bobby had also said before he had made the admissions that were used against him that that richard mczee had killed miss jackson and he had helped clean up afterwards so it's very possible that all of the evidence that the be shown that bobby actually committed the murder could also be that all bobby possibly did was concealed a homicidal death or had knowledge of miss jackson's death after it occurred and he actually was not the one that murdered her i think that's important for the court to consider is that here there actually is an alternative alternative theory that bobby was trying to present at trial and when you look at the evidence and thinking of that alternative theory that mr mczee was the one that actually possibly murdered miss jackson that considering that and then the totality of the circumstances this court should find that bobby's statement was not voluntary and that his statement should have been suppressed and we ask that this his sentence and conviction be reversed this case be remanded back to the circuit court and ordered that bobby's statements be suppressed your honors are there any other questions no appear not to be okay very good well thank you counsel both for your arguments in this matter this afternoon is taken under advisement and a written disposition shall issue from the court um the court will stand in recess subject to call next scheduled call in march uh you council will be exited from the remote uh hearing and we will recess for conference thank you